**AMERICAN CETACEAN SOCIETY, et al., Plaintiffs,**

**v.**

**Bruce SMART, et al., Defendants.**

**Civ. A. No. 84–3414.**

United States District Court, District of Columbia.

Nov. 18, 1987.

William D. Rogers, Ann E. Misback, Barbara E. Palmer, and Daniel C. Esty of Arnold & Porter, Washington, D.C., for plaintiffs.

Raymond B. Ludwiszewski, Associate Deputy Atty. Gen., Washington, D.C., for the Government.

Richard A. Frank, Washington, D.C., for defendant-intervenors.

## OPINION

CHARLES R. RICHEY, District Judge.

The plight of the whales is again before the Court in the form of plaintiffs' Motion for Relief From Judgment pursuant to Fed. R.Civ.P. 60(b). In support of their motion for relief, plaintiffs allege that "misrepresentations made by the [defendants] prevented [plaintiffs] from fully and fairly presenting their case and misled the [Su-

preme Court] into reversing the decisions below and rendering a decision that is manifestly unjust under the circumstances." Plaintiffs' Memorandum of Points and Authorities in Support of Their Motion for Relief From Judgment pursuant to Fed.R. Civ.P. 60(b), p. 7 ("Plaintiffs' Brief"). Plaintiffs also allege that "newly discovered evidence" supports their motion for relief. *See* Plaintiffs' Brief, pp. 27–29. As a last result, plaintiffs invoke this Court's authority to relieve them from the Supreme Court's judgment on the ground that to do so would "avoid a manifestly unjust result." Plaintiffs' Brief, pp. 29–30. The Court denies plaintiffs' motion for relief from judgment. The Court finds that there was no misrepresentation made to the Supreme Court, that there is no newly discovered evidence to support relief, and that there are no "extraordinary circumstances" that otherwise support plaintiffs' motion.

## I. BACKGROUND

In *Japan Whaling Association v. American Cetacean Society,* — U.S. ——, 106 S.Ct. 2860, 92 L.Ed.2d 166 (1986), the Supreme Court held that the Secretary of Commerce retained discretion to decide whether Japan's commercial minke and sperm whaling in contravention of an International Whaling Commission ("IWC") moratorium "diminishes the effectiveness" of the International Convention for the Regulation of Whaling ("ICRW") thereby avoiding mandatory "certification" of Japan for purposes of certain types of sanctions. In so doing, the Court reversed both the Court of Appeals, *American Cetacean Society v. Baldrige,* 768 F.2d 426 (D.C.Cir. 1985), and the District Court, *American Cetacean Society v. Baldridge,* 604 F.Supp. 1398 (D.D.C.1985). By the instant motion, plaintiffs seek to reinstate the executive action prescribed by statute, *i.e.,* certification of Japan under the Pelly and Packwood–Magnuson Amendments. However, it is clear that plaintiffs' have misread the Supreme Court's decision and have placed undue emphasis on particular questions asked by several of the Justices during oral argument.

■ Contrary to plaintiffs' suggestion, the Supreme Court does not include among its constitutional powers the role of protecting the whales from the Japanese. Its role in this case was to review the legislative history of the Pelly Amendment to the Fishermen's Protective Act of 1967, 22 U.S. C. § 1978, and the Packwood Amendment to the Magnuson Fishery Conservation Management Act, 16 U.S.C. § 1801, to see whether Congress had addressed the nature of the Secretary of Commerce's duty and whether the Secretary was required to certify every departure from the IWC's scheduled limits on whaling. *See* 106 S.Ct. at 2868. Simply put, the question presented to the Supreme Court was whether the Secretary had exceeded his authority by relying on the Murazumi–Baldrige Agreement instead of certifying Japan's IWC-quota overkill in an effort to achieve Congress' objective of protecting and conserving the whales. Thus, the Supreme Court held that

> the Secretary's decision to secure the certainty of Japan's future compliance with the IWC's program through the 1984 executive agreement, rather than rely on the possibility that certification and imposition of economic sanctions would produce the same or better result, is a reasonable construction of the Pelly and Packwood Amendments. Congress granted the Secretary the authority to determine whether a foreign nation's whaling in excess of quotas diminshes the effectiveness of the IWC, and we find no reason to impose a mandatory obligation upon the Secretary to certify that every quota violation necessarily fails that standard.

106 S.Ct. at 2872. Thus, even assuming that the Japanese misrepresented their intentions regarding the cessation of commercial whaling, that misrepresentation must be addressed in the first instance by the Secretary of Commerce.

## II. PLAINTIFFS' MOTION FOR RELIEF FROM JUDGMENT PRESENTS A CASE OR CONTROVERSY FOR REVIEW BY THIS COURT

■ Both the defendants and the defendant-intervenors challenge plaintiffs' motion

on the ground that it presents no case or controversy ripe for review by this Court. They point to the fact that the subsistence and research proposals have not been enacted, no license has issued, no ship has set sail, and, most importantly, no whale has been harpooned under either proposal. *See* Defendants' Memorandum in Opposition to Plaintiffs' Motion for Relief from Judgment, pp. 16–19; Intervenors' Memorandum in Opposition to Plaintiffs' Motion for Relief from Judgment, pp. 7–8. The ability of this Court to hear plaintiffs' motion does not depend on these facts. Plaintiffs allege that newly discovered evidence, misrepresentations, and the need to avoid a manifestly unjust result entitles them to relief from judgment under Fed.R.Civ.P. 60(b)(2), (3), and (6). Thus, plaintiffs' motion is entitled to be decided on the merits.

### III. PLAINTIFFS' MOTION FOR RELIEF FROM JUDGMENT MUST BE DENIED BECAUSE THEY HAVE FAILED, AS A MATTER OF LAW, TO SHOW SUFFICIENT GROUNDS SUPPORTING RELIEF FROM THE SUPREME COURT'S DECISION

A. *Plaintiffs' Allegations that Japan Misrepresented Its Intentions Regarding Commercial Whaling, Even If True, Do Not Disturb the Rule of the Case that the Secretary of Commerce Has Discretion to Consider Alternatives to Certification in an Effort to Encourage Compliance with IWC Quotas*

■ The burden of proof of [misrepresentation] is on the moving party and must be established by clear and convincing evidence. Wright & Miller, Federal Practice and Procedure: Civil § 2860. A motion for relief from judgment on the ground of misrepresentation will be denied if it is merely an attempt to relitigate the case or if the court otherwise concludes that misrepresentation has not been established. *See id.* Plaintiffs simply fail to meet these requirements and are therefore not entitled to relief from judgment pursuant to Fed.R. Civ.P. 60(b)(3). In the first place, plaintiffs appear to have misread the Supreme

Court's holding. The Supreme Court itself did not have to be satisfied that Japanese commercial whaling would cease. Rather, the Court held that it was reasonable for the Secretary of Commerce under the circumstances to conclude that the Japanese would cease such whaling. In the second place, plaintiffs' allegation that the Japanese proposals regarding subsistence whaling and research whaling constitute misrepresentation does not satisfy the clear and convincing standard. Plaintiffs point to no facts beyond several proposals to support their allegation regarding the true nature of Japan's intent with respect to commercial whaling. The Court is convinced that plaintiffs' motion is but an attempt to relitigate a case that it lost before the Supreme Court.

■ The Supreme Court found in *Japan Whaling Association* that certification pursuant to the Pelly and Packwood Amendments was not automatic when Japan refused to abide by the IWC quotas because, in the first instance, the Secretary must determine that such operations "diminish the effectiveness" of the ICRW. 106 S.Ct. at 2867. While the Secretary has discretion to make that determination, once it is made, certification is mandatory. In this case, the Secretary "determined that it would better serve the conservation ends of the [ICRW] to accept Japan's pledge to limit its harvest of sperm whales for four years and to cease all commercial whaling in 1988, rather than to impose sanctions and risk continued whaling by the Japanese." *Id.* In light of this finding, the Supreme Court held that "the Secretary's construction that there are circumstances in which certification may be withheld, despite departures from the [IWC] Schedules and without violating his duty is a reasonable construction of the language used in [the Pelly and Packwood] amendments." *Id.*

Notwithstanding the rule of the case as explicated above, plaintiffs insist that the Supreme Court's decision hinged on the certainty that all Japanese commercial whaling would cease, *see* Plaintiffs' Brief, p. 13, and that the Justices were not in-

formed that the Japanese intended to substitute "research whaling" and "subsistence whaling" for commercial whaling, *see* Plaintiffs' Brief, p. 25. Plaintiffs would have this Court ignore the text of the Supreme Court's decision and engage in a mind-reading exercise. This Court is not prepared to speculate as to what was on the minds of those Justices in the majority. Furthermore, plaintiffs ask this Court to find that proposals made but not enacted that were known to the Supreme Court both in the parties' briefs and at oral argument constitute misrepresentations for the purposes of affording plaintiffs relief from judgment. This Court declines to adopt plaintiffs' reasoning and denies the motion pursuant to Fed.R.Civ.P. 60(b)(3).

**B.** *Plaintiffs Have Not Shown that Newly Discovered Evidence Exists to Enable Them to Obtain Relief from Judgment*

 To obtain relief from judgment pursuant to Fed.R.Civ.P. 60(b)(2) on the basis of newly discovered evidence, the moving party must show that the evidence was in existence at the time of trial, but if it was in the possession of the party before the judgment was rendered it is not newly discovered evidence that affords relief. *See* Wright & Miller, Federal Practice and Procedure: Civil § 2859, pp. 182–83. Furthermore, the evidence must be such as was not and could not by the exercise of diligence have been discovered in time to present in the original proceeding. *See* 7 Moore's Federal Practice ¶ 60.23[4]. It must also be admissible and credible and must be of such a material and controlling nature as will probably change the outcome. *Id.* Plaintiffs fail to meet these requirements to support their contention that newly discovered evidence exists, *i.e.,* the Japanese subsistence and research whaling proposals, that illustrates that Japan plans to continue commercial whaling.

First, plaintiffs were aware of a Japanese subsistence whaling program in April of 1986; a proposal that plaintiffs characterize as "a plan to label [Japan's] existing commercial coastal whaling hunt as 'subsistence whaling' in order to circumvent

the 1982 IWC moratorium on commercial whaling and in violation of the 1984 Murazumi–Baldrige agreement." *See* Britten Affidavit ¶ 6. Plaintiffs' Brief in Opposition to Petition for Writ of Certiorari and their brief as respondents following the grant of certiorari indicate a concern that Japan might try to disguise its commercial whaling activities as subsistence or research whaling. Furthermore, plaintiff counsel told the Supreme Court that even under the terms of the Murazumi–Baldrige Agreement the possibility existed that Japan could continue "scientific whaling, aboriginal whaling and in the end, if is chooses to, the withdrawal from the [IWRC]." Transcript of Proceedings Before the Supreme Court, Nos. 85–954 and 85–955 (April 30, 1986), pp. 26–27. Thus, Japan's proposed subsistence whaling program was known by plaintiffs and the Supreme Court *prior* to judgment.

Second, Japan's proposed research whaling program came into existence approximately nine months after the Supreme Court ruled, notwithstanding the fact that the Supreme Court was also apprised that whaling for scientific or research purposes remained an option for the Japanese in light of the Murazumi–Baldrige Agreement. Plaintiffs infer that this delay was all part of the "conspiracy" fomented by the Japanese in an attempt to avoid certification and continue commercial whaling. This theory seems strikingly thin when one considers that scientific whaling is not covered by the IWRC at all and yet Japan submitted this proposal to the Scientific Committee of the IWC for comments by members who have by and large rejected the proposal. Japan, at least for the time being, has accepted the collective judgment of the Committee and not moved unilaterally to initiate its scientific whaling proposal.

In the course of a hearing held on November 18, 1987, it was made known to the Court that there is some indication that at least part of the Japanese commercial whaling fleet is being refurbished in order to set sail in mid-December for the Antarctic Ocean to conduct surveys and that some of the sailors who crewed aboard

commercial whalers are being hired. Plaintiffs did not dispute that Japan was not precluded from research whaling, but rather argued that using the same vessels and crew as were engaged in commercial operations shows up the ruse that the Japanese have played. However, the Court is at a loss to understand what other kinds of ships or types of sailors would be better suited to conduct research on whales in the Antarctic Ocean. If Japan's research program is a sham, the Secretary of Commerce should have first crack at exposing it.

█ Finally, the Court is not convinced that this "evidence" would have changed the result. The terms "commercial," "research," and "subsistence" are recognized as discrete categories of whaling. The type of whaling at issue before the Supreme Court was "commercial" whaling. The Supreme Court held that the Secretary furthered this [conservation] objective by entering into the agreement with Japan calling for that nation's acceptance of the worldwide moratorium on *commercial* whaling. *See* 106 S.Ct. at 2871 (emphasis added). Counsel for plaintiffs during the course of the November 18 hearing represented to the Court that at oral argument before the Supreme Court counsel for the petitioners stated at 63 different times that the Murazumi–Baldrige Agreement spelled the end of all whaling by Japan. However, one need only read the Supreme Court's holding to discern that the Supreme Court understood that it was the goal of the agreement to end all commercial whaling by Japan. *See* 106 S.Ct. at 2872. Once again, this Court must emphasize that if Japan has proposed programs that are but shams and permit it to continue commercial whaling, then the Secretary of Commerce should make that determination. Any attempt by Japan to disguise a massive commercial whaling operation as a "scientific" or "research" effort ought to be rather obvious. Even if it is not so obvious to the Secretary of Commerce, plaintiffs will be swift in bringing it to the Secretary's attention and to the Courts, if necessary.

*C. Plaintiffs Fail to Show "Extraordinary Circumstances" Justifying the Invocation of This Court's Discretion to Order Relief Pursuant to Fed.R.Civ.P. 60(b)(6)*

█ As a last resort, plaintiffs seek relief from judgment pursuant to Fed.R.Civ. P. 60(b)(6). Relief under this subsection of the rules may be granted by the Court in its discretion in extraordinary circumstances to avoid manifest injustice where "the judgment was obtained by the improper conduct of the party in whose favor it was rendered or the judgment resulted from the excusable default of the party against whom it was directed under circumstances going beyond the earlier clauses of the rule." *See* Wright & Miller, Federal Practice and Procedure: Civil § 2864; *see also Klapprott v. United States,* 335 U.S. 601, 613–15, 69 S.Ct. 384, 389–91, 93 L.Ed. 266 (1949); *Ackerman v. United States,* 340 U.S. 193, 202, 71 S.Ct. 209, 213–14, 95 L.Ed. 207 (1950). Unlike the situation addressed by the Court of Appeals for the District of Columbia in *Good Luck Nursing Home, Inc. v. Harris,* 636 F.2d 572, 577 (D.C.Cir. 1980), there has been no error caused by the parties' failure to make key facts known. As noted already, if there has been a misrepresentation made, it was made to the Secretary of Commerce. The only question before the Supreme Court was whether it was reasonable for the Secretary to conclude that he had discretion under the Pelly and Packwood Amendments to consider alternatives to certification in the effort to achieve worldwide compliance with IWC quotas. Thus, Fed.R. Civ.P. 60(b)(6) affords no basis for plaintiffs to seek relief from the judgment of the Supreme Court.

### ORDER

In accordance with the Opinion issued of even date, it is by the Court this 18th day of November, 1987

ORDERED that plaintiffs' motion for relief from judgment pursuant to Fed.R. Civ.P. 60(b)(2) be, and hereby is, denied; and it is

FURTHER ORDERED that plaintiffs' motion for relief from judgment pursuant to Fed.R.Civ.P. 60(b)(3) be, and hereby is, denied; and it is

FURTHER ORDERED that plaintiffs' motion for relief from judgment pursuant to Fed.R.Civ.P. 60(b)(6) be, and hereby is, denied.