Hakan LANS, Plaintiff,

v.

GATEWAY 2000, INC., Defendant.

No. CIV.A.97–2523 (JGP).

United States District Court,
District of Columbia.

April 13, 2000.

Louis S. Mastriani, Steven E. Adkins, Adduci, Mastriani & Schaumberg, L.L.P., Washington, DC, for Hakan Lans, plaintiffs.

David Oliver Bickart, Ross D. Cooper, Kaye, Scholer, Fierman, Hays, Handler, L.L.P., Washington, DC, Robert A. Berger, Robert M. Rader, Winston & Strawn, Washington, DC, Martin L. Lagod, Michele E. Moreland, Gary H. Ritchey, Cooley Godward LLP, Palo Alto, CA, for Gateway 2000, Inc., defendants.

## MEMORANDUM

PENN, District Judge.

This matter is before the Court on plaintiff's Rule 60(b)(2) **Motion Regarding Newly Discovered Material Evidence [# 99]**. For the reasons set forth below, plaintiff's Rule 60(b)(2) motion is denied.

## BACKGROUND

### A. Procedural background

On November 23, 1999, this Court granted summary judgment to defendant and dismissed the above-captioned action for patent infringement, along with seven other related lawsuits.[1] *See* Memorandum of the Court ("Memorandum")(filed Nov. 23, 1999). The patent infringement action was dismissed because plaintiff conceded that he was not the actual owner of the patent.[2] As such, the Court concluded

---

1. The seven other related lawsuits are *Lans v. Digital Equipment Corp.*, No. 97–2493 (D.D.C. filed Oct. 24, 1997); *Lans v. Hewlett–Packard Co.*, No. 97–2524 (D.D.C. filed Oct. 24, 1997); *Lans v. Packard Bell NEC, Inc.*, No. 97–2525 (D.D.C. filed Oct. 24, 1997); *Lans v. Dell Computer Corp.*, No. 97–2526 (D.D.C. filed Oct. 24, 1997); *Lans v. Compaq Computer Corp.*, No. 97–2527 (D.D.C. filed Oct. 24, 1997); *Lans v. Acer America Corp.*, No. 97–2528 (D.D.C. filed Oct. 24, 1997); and *Lans v. AST Research, Inc.*, No. 97–2529 (D.D.C. filed Oct. 24, 1997). Two other related suits, *Lans v. Olsy North America*, No. 97–2530 (D.D.C.

filed Oct. 24, 1997), and *Lans v. Siemens Nixdorf Info.*, No. 98–0050 (D.D.C. filed Jan. 9, 1998), had been previously dismissed.

2. As the Court noted, Lans admitted that he was not the owner of the patent. Memorandum (filed Nov. 23, 1999) at 3 ("Lans recalled that he had signed the [assignment] approximately ten years ago in the context of granting a license to IBM under the Lans patent. As such, Mr. Lans now understands that the patent is owned by his wholly-owned company, Uniboard [Aktiebolag].") (citations omitted).

that Lans lacked standing to sue for the patent's infringement. Furthermore, since Lans had no standing, his motion to amend the complaint in order to substitute plaintiffs was also denied.[3] On December 22, 1999, Lans filed a notice of appeal to the United States Court of Appeals for the Federal Circuit.[4]

On January 24, 2000, Lans filed a motion pursuant to Federal Rule of Civil Procedure 60(b)(2) ("Rule 60(b)(2)"), seeking reconsideration of the Court's grant of summary judgment based on newly discovered evidence. On March 2, 2000, the Federal Circuit denied Lans's motion to stay proceedings in that forum pending this Court's resolution of the Rule 60(b)(2) motion. As the Federal Circuit noted, "when both a Rule 60(b) motion and an appeal are pending simultaneously, appellate review may continue uninterrupted. At the same time, the District Court may consider the 60(b) motion and, if the District Court indicates that it will grant relief, the appellant may move the appellate court for a remand in order that relief may be granted." *See Hoai v. Vo,* 290 U.S.App. D.C. 142, 146, 935 F.2d 308, 312 (1991), *cited by* Order of the Court (dated March 2, 2000), *Lans v. Digital Equipment Corp., et al.,* (Fed.Cir.2000)(No. 00–1144 *et seq.*).[5]

## B. Nature of the proffered newly discovered evidence

The newly discovered evidence that Lans proffers to the Court consists solely of a document entitled "Clarification–Contract." That document states, *in toto:*

> On the 19th of October 1989 a contract was drawn up between my company Uniboard AB and me (Hakan Lans) personally. It now appears that the transfer can not be carried out at the present time since the patent is being disputed in court. In view of this the following contract is made:
>
> The rights to the U.S. patent 4 303 986 are transferred herewith from me to my company Uniboard for one crown. Patents which are granted as a consequence of this patent are included in the transfer. The transfer means that Uniboard AB has the right to license and receive the proceeds from the patent. Uniboard AB will administer and defray the expenses of everything connected with the patent. Hakan Lans will own the patent but it would be desirable at a later date to transfer the patent to Uniboard AB. The parties will mutually represent each other when it is deemed necessary.
>
> Saltsjobaden October 27, 1989

| Uniboard AB | Personally |
|---|---|
| (signature) | (signature) |
| Hakan Lans | Hakan Lans |
| Ringvagen 56E | Ringvagen 56E |
| 133 00 Saltsjobaden | 133 00 Saltsjobaden |

Clarification–Contract (attached to Plaintiff Hakan Lans' Rule 60(b)(2) Motion Regarding Newly Discovered Evidence

**3.** For a fuller discussion of this issue, *see* Timothy R. DeWitt & Tamara S. Klein, *A Fatal Mistake: Lack of Standing at the Time of Filing a Patent Infringement Complaint Results in Dismissal with Prejudice,* 27 A.I.P.L.A. Q.J. 189 (1999).

**4.** The Court notes that Uniboard Aktiebolag ("Uniboard" or "Uniboard AB") has filed a patent infringement suit against the same eight defendants on November 29, 1999. That case, *Uniboard Aktiebolag v. Acer America Corp.,* No. 99–3153 (D.D.C. filed Nov. 29, 1999), was transferred to this Court by order of the Court's Calendar Committee on February 14, 2000.

**5.** *See also Fobian v. Storage Technology Corp.,* 164 F.3d 887, 891 (4th Cir.1999)("when a Rule 60(b) motion is filed while a judgment is on appeal, the district court has jurisdiction to entertain the motion, and should do so promptly. If the district court determines that the motion is meritless, as experience demonstrates is often the case, the court should deny the motion forthwith; any appeal from the denial can be consolidated with the appeal from the underlying order. If the district court is inclined to grant the motion, it should issue a short memorandum so stating. The movant can then request a limited remand from [the appellate] court for that purpose.").

("Lans Rule 60(b)(2) Motion")(filed Jan. 24, 2000)).[6]

### DISCUSSION

■] Federal Rule of Civil Procedure 60(b), in relevant part, provides that "on motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for ... (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b)[.]" The Court begins with an analysis of the elements which must be satisfied on a Rule 60(b)(2) motion. In order for evidence to meet the requirements of Rule 60(b)(2),

> the following criteria must be met: (1) the evidence must have been in existence at the time of trial; (2) the evidence must be such that it was not and could not by the exercise of due diligence have been discovered in time to present it in the original proceeding; (3) the evidence must not be merely cumulative or impeaching; and (4) the evidence must be admissible and credible, and of such a material and controlling nature as will probably change the outcome.

*In re Korean Air Lines Disaster of September 1, 1983*, 156 F.R.D. 18, 22 (D.D.C. 1994). *See also Raymond v. Raymond Corp.*, 938 F.2d 1518, 1527 (1st Cir.1991); *Kettenbach v. Demoulas*, 901 F.Supp. 486, 493 (D.Mass.1995).

> Moreover, the Court notes that

> [r]egardless of the particular reasons for providing [relief under Rule 60(b) ], the trial judge must strike a "delicate balance between the sanctity of final judgments ... and the incessant command of a court's conscience that justice be done in light of all the facts."

Consequently, the district judge, who is in the best position to discern and assess all the facts, is vested with a large measure of discretion is deciding whether to grant a Rule 60(b) motion, and the district court's grant or denial of relief under Rule 60(b), unless rooted in an error of law, may be reversed only for an abuse of discretion.

*Twelve John Does v. District of Columbia*, 268 U.S.App. D.C. 308, 313, 841 F.2d 1133, 1138 (1988) (citations omitted).

### A. Newly discovered evidence which was in existence at the time of trial

■] The first element in the *Korean Air Lines* test is that there be newly discovered evidence which was in existence at the time of trial. Courts and commentators have concluded that "the only evidence that qualifies as 'newly-discovered' evidence within the meaning of the rule justifying setting the judgment aside is evidence of facts that were in existence at the time of the original trial or that relate directly to the facts that were tried." 12 James Wm. Moore, et al., *Moore's Federal Practice* § 60.42[3] (3d ed. 1999)("*Moore's* "). However, the District of Columbia Circuit has noted that the focus of the court's inquiry is not necessarily when the evidence was created, but rather whether the newly discovered evidence "pertain[s] to facts in existence at the time of the trial, and not to facts that have occurred subsequently." *Nat'l Anti-Hunger Coalition v. Executive Comm. of the President's Private Sector Survey on Cost Control*, 229 U.S.App. D.C. 143, 147, 711 F.2d 1071, 1075 (1983)(footnote 3). Using this standard, it would appear that the Clarification–Contract is newly discovered evidence, both because it appears, on its face, to have been in existence at the time of judgment, and because it relates to

---

**6.** The original version of this document was drafted in Swedish, and was entitled "Fortydligande–Avtal." Lans has submitted a "Certification of Translation" executed by Margareta Storm, attesting that the Clarification–Contract is "a true and accurate transla-tion" of the original Swedish text. It should be further noted that Lans provided the Court with a photocopy of the original Swedish text, which has no authentication of the date of its execution, such as a notarization.

facts that were in existence at the time of the judgment, namely the ownership of the '986 patent.

■ However, there are two ancillary caveats which the Court must consider when evaluating whether the Clarification–Contract is indeed newly discovered evidence within the context of Rule 60(b)(2). First, it has been held that evidence cannot be newly discovered if it was known to the party at the time of trial. *See, e.g., Parrilla–Lopez v. U.S.,* 841 F.2d 16, 19 (1st Cir.1988)(evidence known to party at time of trial is not "discovered" after trial simply because party thought that it was not worth time and expense to track down until receiving unfavorable result at trial). In the present case, it is quite evident that Lans knew about the existence of the Clarification–Contract, especially since Lans executed the instrument for both himself and Uniboard. Lans even admits that he had knowledge of the Clarification–Contract prior to the Court's grant of summary judgment to Gateway. *See* Declaration of Hakan Lans Regarding Newly Discovered Evidence ("Lans Decl.")(dated Jan. 21, 2000) at ¶ 4–6 ("Even then, I remembered writing some type of document, but I could not remember precisely what was written in the document or what had happened to it."). Assuming Lans's declaration to be true, the Court cannot conceive of why Lans failed to notify the Court of the potential existence of the Clarification–Contract and request more time to search for it. Instead, Lans chose to concede Uniboard's ownership of the patent in support of his motion to substitute parties rather than request additional time to seek the evidence he now presents to the Court. Rule 60(b)(2) was not designed to afford parties the opportunity to revisit choices made in the thick of litigation. Since Lans knew of the Clarification–Contract's existence, he cannot now claim that it is newly discovered evidence.

Second, this Court has previously held that evidence "in the possession of the party before the judgment was rendered ... is not newly discovered evidence that affords relief." *American Cetacean Soc'y v. Smart,* 673 F.Supp. 1102, 1106 (D.D.C.1987)(Richey, J.). *See Coastal Transfer Co. v. Toyota Motor Sales, U.S.A.,* 833 F.2d 208, 211–12 (9th Cir.1987)(evidence that is somehow in possession of party at time of trial may not be "discovered"); *see also Longden v. Sunderman,* 979 F.2d 1095, 1103 (5th Cir.1992)(misplaced evidence is not newly discovered evidence); *Taylor v. Texgas Corp.,* 831 F.2d 255, 259 (11th Cir.1987)(party may not "discover" after trial evidence that was within knowledge of employees at time of trial). The Court concludes that the Clarification–Contract was in Lans's possession, even if he could not recall its physical location. As noted, misplaced evidence subsequently found is not newly discovered evidence. Furthermore, the Clarification–Contract turned up in the possession of his accountant. *See* Declaration of Leif Gyllenhoff Regarding Newly Discovered Evidence ("Gyllenhoff Decl.")(dated Jan. 21, 2000) at ¶¶ 2–5 (discussing Gyllenhoff's role as Lans's accountant and tax advisor); Lans Decl. at ¶¶ 10–14 (discussing how the Clarification–Contract turned up in Gyllenhoff's possession). It is well established that documents in the possession of a party's agent, such as an attorney or accountant, are deemed to be in the party's possession because the party retains control over the documents. *See MTB Bank v. Federal Armored Express, Inc.,* 1998 WL 43125, 1998 U.S. Dist. LEXIS 922, *11–12 (S.D.N.Y.1998)(documents within the possession of a party's counsel or accountant are deemed to be within that party's possession, custody and control)(collecting authority). Therefore, since Lans had actual knowledge and constructive possession of the Clarification–Contract prior to the grant of summary judgment to Gateway, the Clarification–Contract is not newly discovered evidence for the purposes of Rule 60(b)(2).

**B. Due diligence**

■ Second, Lans must demonstrate to the Court that the failure to produce the

newly discovered evidence did not result from a lack of diligence on his part, and that the evidence could not by the exercise of due diligence have been discovered in time to present it in the original proceeding. Furthermore, the diligence inquiry "looks not to what the litigant actually discovered, but what he or she *could* have discovered." *Moore's* at ¶ 60.42[5] (emphasis original). Furthermore, the motion for relief must explicitly set out facts as to how the party sought out the missing evidence. *See United States v. Potamkin Cadillac Corp.*, 697 F.2d 491, 493 (2d Cir.1983)("Given the feebleness of [movant's] proffer of 'due diligence,' . . . it was well within the district court's discretion to reject the explanations").

Lans's proffer of evidence regarding his due diligence in attempting to locate the Clarification–Contract prior to the grant of summary judgment is as follows:

> When discovery requests in the Lans patent cases were served, Mr. Lans contacted Mr. Gyllenhoff to ask him to search for documents covered by those requests. Mr. Gyllenhoff informed Mr. Lans that he did not have any such document. Mr. Lans had also searched his own and Uniboard's records for such documents and has found none.

> The new evidence was not discovered initially despite the fact that Mr. Lans exercised due diligence in searching for evidence to support his position. Recently, Mr. Lans, for the second time in the context of this litigation, contacted Mr. Gyllenhoff to request that Mr. Gyllenhoff search again for any documents that would show that Mr. Lans had been honest in his representations to the Court. Mr. Gyllenhoff again searched his basement office to no avail. To satisfy Mr. Lans' request, however, Mr.

Gyllenhoff also looked in another area of his basement where his office used to be. There, Mr. Gyllenhoff discovered the Clarification–Contract and informed Mr. Lans of this discovery.

Lans Rule 60(b)(2) Motion at 16–17 (citations omitted).

The Court is not convinced that this proffer satisfies Lans's burden of demonstrating due diligence. First, Lans fails to demonstrate that his original search was specifically targeted to finding the Clarification–Contract. His own proffer states that during his original search he merely asked Gyllenhoff to search for documents which might be responsive to various discovery requests. Lans does not even allege that he specifically undertook to locate the Clarification–Contract until after the Court granted summary judgment to Gateway. *See* Lans Decl. at ¶¶ 10–14. This cursory interaction with Gyllenhoff prior to the grant of summary judgment is not enough to establish due diligence.[7]

Second, whatever actions Lans took to locate the Clarification–Contract are undermined by the plain fact that Lans knew that the Clarification–Contract existed, regardless of whether he could actually get his hands on it. The Court is unsympathetic to arguments that Lans could not remember where the Clarification–Contract was.[8] Again, if Lans could not remember where the Clarification–Contract was, he should have notified the Court and the defendants as to its potential existence and requested time to locate it. *See Pesca v. Board of Trustees*, 176 F.R.D. 110, 114 (S.D.N.Y.1997)("if [movant's] affidavit means what it says, there is no basis for relief because he either knew the facts he now seeks to adduce or knew enough so that his failure [to locate the evidence] is inconsistent with his having acted with due diligence").[9] The Court concludes that the

---

7. *See Washington v. Patlis,* 916 F.2d 1036, 1039 (5th Cir.1990)(letter and telephone call insufficient attempt to locate a witness).

8. It is undisputed that Lans's memory lapse had more to do with where the Clarification–Contract was located, rather than whether the

Clarification–Contract actually existed. *See* Lans Decl. at ¶ 6.

9. Lans characterizes *Pesca* as inapposite because the movant in that case was seeking equitable relief under Rule 60 since Rule 60's

Clarification–Contract is a document which Lans could have located had he requested and/or required Gyllenhoff to perform a thorough and specific search of his files earlier in the course of litigation, particularly at the time when the issue of who actually owned the '986 patent first arose. Instead, as already noted above, Lans made a strategic choice to not investigate further into the existence of the Clarification–Contract, to concede Uniboard's ownership of the patent, and to motion the Court for leave to substitute plaintiffs.[10]

Finally, Lans's concession of Uniboard's ownership of the patent, especially when he had knowledge that the Clarification–Contract potentially existed, can only be interpreted as a tacit admission that there was no other evidence in his possession which cast doubt on the patent ownership. *See United States v. McGaughey*, 977 F.2d 1067, 1075 (7th Cir.1992)(belated discovery of document in defendant's control which defendant had denied existed belies due diligence). To hold otherwise would ignore the very purpose of discovery, as well as undermine the sanctity of final judgments. Based on these principles and the evidence proffered by Lans, the Court is unable to conclude that he has met Rule 60(b)(2)'s due diligence requirement.

Despite Rule 60(b)(2)'s clear requirement that the movant demonstrate due diligence, Lans has suggested the failure to do so is not necessarily a fatal defect in Lans's Rule 60(b)(2) motion. Lans repeatedly entreats the Court to follow the holding of *Ferrell v. Trailmobile, Inc.* 223 F.2d 697 (5th Cir.1955). In *Ferrell*, plaintiff won a judgment for foreclosure against a defendant who he claimed failed to make an installment payment. After the judgment was entered, defendant paid the judgment, but then found conclusive proof that he had made the payment in questions. The district court denied relief from the judgment on the ground that the judgment had been satisfied. The Fifth Circuit reversed, holding that if

> practically conclusive evidence shows that the appellant had actually paid all eighteen installments for the purchase of the trailer, it is obvious that the judgment should be set aside to prevent a manifest miscarriage of justice. In such a case, the ends of justice may require granting a new trial even though proper diligence was not used to secure such evidence for use at the trial.

*Ferrell*, 223 F.2d at 698.

The approach suggested by *Ferrell* is indeed tempting, however its application in this case would require the Court to ignore the clear requirements of Rule 60(b)(2), and so the Court declines to undertake such an application. Indeed the Fifth Circuit itself appears to have subsequently limited the application of *Ferrell* to subdivision (5) of Rule 60(b).[11] *See Johnson Waste Materials v. Marshall*, 611 F.2d 593, 599–600 (5th Cir.1980)(citing *Ferrell* for the proposition that: "Unlike Fed. R.Civ.P. 60(b)(2), Rule 60(b)(5) on its face does not require that the evidence supporting the motion be 'newly discovered' or that the movant have exercised 'due diligence' to secure it. Nor have we been willing to read such requirements into a

one-year time limit has expired, and that the equitable nature of the proceeding caused the Court to employ a "more stringent" standard than that normally applied under Rule 60. *Pesca*, 176 F.R.D. at 113. While the Court appreciates this factual distinction, the Court still finds persuasive the analysis of how prior knowledge of a document's existence belies claims of due diligence in attempting to locate it.

10. *See Silverberg v. Baxter Healthcare Corp.*, 1990 WL 129646, 1990 U.S. Dist. LEXIS 11246, *5 (N.D.Ill.1990)(a poor decision in not properly investigating is not a proper basis for reopening a decision on summary judgment).

11. Rule 60(b)(5) provides for relief from judgment if "the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application."

Rule 60(b)(5) motion involving prior payment of an obligation on which a judgment is based."); *see also Central States, S.E. and S.W. v. Central Cartage*, 69 F.3d 1312, 1314–1315 (7th Cir.1995), *cert. denied*, 517 U.S. 1134, 116 S.Ct. 1419, 134 L.Ed.2d 544 (1996)(concurring that *Ferrell* meant to be applied in Rule 60(b)(5) cases, not to create an exception to the due diligence requirement of Rule 60(b)(2)).[12]

## C. Cumulativeness

The third requirement under Rule 60(b)(2) is that the evidence not be cumulative of evidence offered at the original proceeding, and that the evidence not be impeaching in nature. The defendant does not contest that Lans has satisfied this element, and so, without belaboring the point, the Court will accept that Lans has satisfied his burden of demonstrating that the evidence is not cumulative of other evidence previously submitted, and it not impeaching in nature.[13]

## D. Admissibility, credibility & materiality

Finally, the newly discovered evidence must be both admissible and credible, and of such a nature that it would probably change the outcome.

### 1. Admissibility

■ In order for the Court to grant relief from judgment based on newly discovered evidence, that evidence must be admissible. As Moore notes, "[t]here is no reason to set aside a judgment on the basis of evidence that could not be admitted at a new trial . . . ." *Moore's* at ¶ 60.42[6]. Gateway alleges that the Clarification–Contract

is not admissible because Lans failed to disclose the Clarification–Contract pursuant to the requirements of various federal rules of civil procedure and orders of this Court. *See* Opposition of Defendant Gateway 2000, Inc. to Plaintiff Hakan Lans' Rule 60(b)(2) Motion Regarding Newly Discovered Evidence (filed Feb. 3, 2000)("Gateway Opposition") at 14–16. This argument seems counter-intuitive to Rule 60(b)(2) cases, for if the evidence was indeed truly newly discovered, then the movant would hardly have been in a position to comply with disclosure requirements. As such Gateway's arguments to this regard are more appropriate to the "newly discovered" and "due diligence" prongs of the Rule 60(b)(2) test.

When considering admissibility, the Court instead looks at the competency of the evidence, including factors such as whether the Clarification–Contract is hearsay, or whether Lans has complied with the requirements of authentication, identification, and admitting the contents of writings embodied in the Federal Rules of Evidence. *See* Fed.R.Evid. 802, 901, 902, 903, 1002, 1003, 1004. If the proffer of the Clarification–Contract violated one of these rules, than the Clarification–Contract is inadmissible evidence which cannot be considered under Rule 60(b)(2).

The Court has no basis to conclude, at this time, that the Clarification–Contract would be inadmissible evidence. Since Lans is offering the Clarification–Contract to show that his mistake in suing in his own name was an honest and understandable mistake, the Clarification–Contract is a non-hearsay statement, therefore there is no admissibility problem under the hear-

---

**12.** As Moore notes, "the authority for an exception to the requirements of Rule 60(b)(2) when the newly-discovered evidence is 'conclusive' is shaky at best. The most sensible approach is to ignore *Ferrell* to the extent that it implies an exception to the due diligence requirement of Rule 60(b)(2). To the extent that *Ferrell* meant to create such an exception, it is wrongly decided." *Moore's* at ¶ 60.42[10].

**13.** That having been said, an argument could be made that the Clarification–Contract is both cumulative and/or impeaching in nature as it seeks to bolster assertions made in Lans's declaration in support of his motion to substitute plaintiffs. However, since Gateway has not raised that issue, the Court will not dwell on it.

say rules. As for authentication and identification, Lans's own declaration suffices on this point. Finally, the rules of evidence describing a preference for the originals of documents clearly provide for the admissibility of duplicates. Therefore, the Clarification–Contract appears to be admissible evidence.

### 2. Credibility

As the decision to grant a Rule 60(b)(2) motion is in the discretion of the district judge, it stands to reason that the district judge must consider whether the proffer of newly discovered evidence is credible. *See Daniels v. Pipefitters' Ass'n Local Union No. 597*, 983 F.2d 800, 802–03 (7th Cir.1993)("it is only logical that a district court weigh the credibility of evidence before granting or denying a Rule 60(b)(2) motion. Rule 60(b)(2) motions are decided by judges; not by juries. Credibility determinations are necessary to those decisions.").

Two factors undermine the credibility of the Clarification–Contract. The first is that the original Swedish version of the Clarification–Contract has no mark of notarization which would authenticate the date of its execution. As the Clarification–Contract was solely executed by Lans, once in his individual capacity and once as Uniboard's representative, a mark of notarization would conclusively determine that the contract was executed when Lans claims. Given the history of this case and the difficulty in determining the actual ownership of the '986 patent, particularly the somewhat convenient discovery of the Clarification–Contract, the lack of notarization only adds to the Court's wariness of the Clarification–Contract.

Furthermore, the Court is compelled to take judicial notice of the fact that Uniboard has filed a patent infringement suit against the same eight defendants Lans sued, over the same patent, and represented by the same attorneys. In its complaint, Uniboard, of which Lans is the sole shareholder and managing director, claims ownership of the patent. If Lans were a co-plaintiff in Uniboard's action, that would bolster the claim of shared ownership the Clarification–Contract seeks to establish. But that is not the case. The result is that the Court sees Lans in his individual capacity claiming he owns the patent, and Uniboard, of which Lans has repeatedly informed the Court he has complete control of, claiming that it owns the patent. Together these two positions are untenable, and thus cast further doubt on the credibility of the Clarification–Contract.

### 3. Of such a nature as to probably change the outcome

Finally, the evidence must be material, and of such a nature as to probably change the outcome. *See Coastal Transfer Co. v. Toyota Motor Sales, U.S.A.*, 833 F.2d 208, 211–12 (9th Cir.1987)(denial of motion proper because "the [newly-discovered evidence], even if produced in a timely fashion, would not have propelled ... [movant] over the hurdle of summary judgment").

At this point, the Court is unable to conclude that the Clarification–Contract would have changed the outcome because the Clarification–Contract's has no impact on Lans's standing. As Gateway points out, Lans had previously assigned all rights in the patent to Uniboard. Therefore, it is not clear that Lans had any rights to reassign or clarify by way of the Clarification–Contract. Lans insists that "the parties to the Clarification–Contract, Uniboard and Mr. Lans, agreed that, whatever the legal effect of the original assignment, Mr. Lans would, as of October 27, 1989, own the Lans patent." Lans Reply at 14. The intentions of the parties notwithstanding, the Court must look to the clear language of the Clarification–Contract. That document is a conveyance of some of the rights in the patent from Lans to Uniboard, rights which Lans had already conveyed, in whole, to Uniboard in the original assignment. Lans may not reserve for himself in the Clarification–

Contract what he has already conveyed in the original assignment. Thus the Clarification–Contract does not give Lans the standing as patentee he needed to survive summary judgment.[14]

Perhaps anticipating that the Court might conclude that Uniboard still owned the patent and that the Clarification–Contract could not be interpreted to do what the parties to that agreement intended, Lans argues that the outcome would likely still have changed. For example, Lans argues that this Court denied Lans's motion to substitute Uniboard as plaintiff because the Court could not conclude that the failure to sue in Uniboard's name was an "honest and understandable mistake." As Lans notes, the Court observed that Lans offered no contemporaneous evidence that he believed the original assignment was lost. Lans Reply at 16. This Clarification–Contract is, assumably, that contemporaneous evidence. While the Clarification–Contract might assuage the Court's concerns regarding the "honest and understandable mistake" test under Rule 17(a), it does not address the Court's more relevant holding under Rule 15(a), namely that "when a plaintiff never had standing to assert a claim against the defendant, plaintiff may not substitute a new plaintiff, a new defendant, or a new claim for the purpose of creating jurisdiction." Memorandum Opinion at 7.

The Court concludes that it is unlikely that the Clarification–Contract would have changed its decision to grant Gateway summary judgment due to a lack of standing or its decision to deny Lans's motion to substitute plaintiffs under Rule 15(a). Therefore, the Clarification–Contract is not evidence of such a nature that it would probably change the outcome.

### CONCLUSION

For the reasons set forth in this Memorandum, the Court concludes that Lans has failed to satisfy his burden under Rule 60(b)(2). Specifically, the Court concludes that the evidence is not newly discovered, that Lans failed to use due diligence to secure its presentation in the original proceeding, that the so-called newly discovered evidence is not thoroughly credible, and that it is not of such a nature that it would probably change the outcome. Therefore, plaintiff's Rule 60(b)(2) motion regarding newly discovered evidence [# 99] is denied. A separate Order accompanies this Memorandum.

---

14. Once again Lans maintains that, regardless of whether the patent belongs to him or to Uniboard, his status as sole shareholder of Uniboard gives him the requisite standing needed to maintain this patent infringement action. Lans Reply at 14–15 (footnote 10). However, it is well-established that shareholders may not maintain lawsuits for injuries to the corporation in an individual capacity, aggrieved shareholders must sue derivatively to vindicate the corporation's rights. "Where the basis of the action is a wrong to the corporation, redress must be sought in a 'derivative' action.... In the shareholders' derivative action the right of the plaintiff to maintain the action is derivative or secondary. The corporation is not merely a formal, but is an indispensable party to the action." Fletcher Cyc. Corp. § 5908 (Perm. Ed.). Perhaps had Lans sought to sue derivatively, or sought to amend his complaint to sue derivatively, the result would be different.